**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

K-Tel International, Inc., and K-Tel International, GmbH,

Plaintiffs,

v.

Tristar Products, Inc.,

Defendant.

Civil No. 00-902 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

John M. Sheran, Esq., and Blake Shepard, Jr., Esq., Leonard, Street and Deinard, 150 Fifth Street South, Suite 2300, Minneapolis, MN 55402, counsel for Plaintiff.

Michael R. Gray, Esq., Gray, Plant, Mooty, Mooty & Bennett, 2400 City Center, 33 South Sixth Street, Minneapolis, MN 55402; Joanne H. Turner, Esq., Mackall, Crounse & Moore, 1400 AT&T Tower, 901 Marquette Avenue South, Minneapolis, MN 55402; James R. Myers, Esq., Venable, Baetjer, Howard & Civiletti, 1201 New York Avenue, Suite 1000, Washington, D.C. 20005; Kenneth A. Godlewski, Esq., and Dawn-Marie Bey, Esq., Kilpatrick Stockton, 700 13th Street, Suite 800, Washington, D.C. 20005; and Thomas E. Graham, Esq., Kilpatrick Stockton, 301 College Street South, Suite 3500, Charlotte, NC 28202, counsel for Defendant.

---

## Introduction

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendant's Motion to Dismiss for Improper Venue, Lack of Personal Jurisdiction, or Forum Non Conveniens or, in the alternative, to Transfer Venue. In the Complaint, Plaintiff has asserted claims for breach of contract, breach of express warranties, and breach of implied warranties. For the reasons set forth below, Defendant's motion is denied.

MAR 28 2001
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Background

Plaintiff K-Tel is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. (Affidavit of Jeffrey M. Koblick at ¶ 3.) Jeffrey M. Koblick is the Executive Vice-President, Purchasing and Operations, for K-Tel. (Koblick Aff. at ¶ 1.)

Plaintiff K-Tel Germany is a wholly-owned subsidiary of K-Tel with its principal place of business in Germany. (Koblick Aff. at ¶ 5.) K-Tel Germany was formerly known as Dominion Vertriebs, GmbH. (Koblick Aff. at ¶ 5.)

Defendant Tristar is a Pennsylvania corporation with its principal place of business in New Jersey.[1] Keith Mirchandani is the President of Tristar. (Keith Mirchandani Aff. at ¶ 2.)

On September 23, 1997, K-Tel and Tristar entered into a written sales and distribution contract for the Bun Blaster product. (Koblick Aff. at ¶ 6.) The contract was directed to K-Tel's President, David Weiner, at its Minneapolis office via fax from Tristar's New Jersey office (Koblick Aff. at ¶ 6) and reads in its entirety:

> This is to confirm that K-Tel International desires to sell and distribute Tristar Products, Inc.'s "Bun Blaster" product in Germany, Austria, and Switzerland. We will sell you such quantities of the Bun Blaster product as you require for resale and distribution in those countries and will indemnify and hold K-Tel International harmless from and against any and all claims and demands arising from or in connection with property, damage, economic loss, and personal injury arising from or related to the Bun Blaster product, except to the extent caused by any action or failure to act by K-Tel International. In return K-Tel International will indemnify and hold Tristar Products, Inc. harmless from and against any and all claims and demands arising from or in connection with K-Tel International's activities in marketing, selling and distributing the Bun Blaster product.

---

[1] Defendant asserts in its memorandum in support of its motions that it is a Pennsylvania corporation with its principal place of business in New Jersey. Defendant cites as a reference to these facts the Plaintiff's Complaint. Plaintiff's Complaint, however, actually asserts that Defendant is a foreign corporation with its principal place of business in Pennsylvania and a branch office in New Jersey.

(Koblick Aff., Ex. A.)

Pursuant to the contract, K-Tel purchased over 60,000 Bun Blaster units from Tristar between September 1997 and August 1998. (Koblick Aff. at ¶ 7.) As a consequence of these purchases, employees of K-Tel and its subsidiaries had frequent contact with employees of Tristar via written correspondence, telephone communications, and facsimiles. (Koblick Aff. at ¶ 10.) K-Tel effectuated these purchases by sending purchase orders from its Minneapolis office to Tristar. (Koblick Aff. at ¶ 7.) Payments were made to Tristar via wire transfer by K-Tel or its subsidiaries totaling $778,469.50. (Koblick Aff. at ¶ 9.) Tristar, in turn, directed shipment of the product directly to K-Tel Germany for resale in Europe. (Koblick Aff. at ¶ 7.) K-Tel also alleges that Tristar named it as an additional insured on its liability policy. (Koblick Aff. at ¶ 13.)

In August 1998, the German government commenced an investigation into the safety of the Bun Blaster product based on a complaint it had received from a consumer who had been injured while using the product.[2] (K-Tel Compl. at 10.) The German government requested that the Plaintiffs cease sales of the product while it carried out its investigation. (K-Tel Compl. at 10.) Upon further investigation, the German government found that the product testing and safety certification information provided it by Tristar was inadequate and as a result the government requested that the Plaintiff recall the product from Germany. (K-Tel Compl. at 12.)

K-Tel Germany, through its legal counsel, attempted to negotiate a settlement with Tristar's German counsel, however, Tristar's German counsel asserted that a contractual

---

[2] The facts that follow have been taken from Plaintiff's Complaint and are accepted as true for the purpose of these motions. *Digi-Tel*, 89 F.3d at 522, citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

relationship did not exist between the two parties. (Koblick Aff., Ex. C.) K-Tel itself also attempted to recover under the contract, but has thus far been unsuccessful.

K-Tel brought this suit against the Defendant alleging breach of express warranties, breach of implied warranties, and breach of contract. The matter is currently before the Court on the Defendant's Motion to Dismiss for Improper Venue, Lack of Personal Jurisdiction, or under the doctrine of Forum Non Conveniens. In the alternative, the Defendant moves the Court to transfer this action to the U.S. District Court for the District of New Jersey.

**Discussion**

**1. Personal Jurisdiction**

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996), citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992), *cert. denied*, 506 U.S. 908, 113 S. Ct. 304, 121 L. Ed. 2d 227 (1992). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd*, 89 F.3d 519, 522 (8th Cir. 1996), citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; the court may inquire, by affidavits or otherwise, into the facts as they exist. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998), quoting *Land v. Dollar*, 330 U.S. 731, 735, n.4, 67 S. Ct. at 1009, 1011, n.4, 91 L. Ed. 2d 1209 (1947). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.

*Digi-Tel*, 89 F.3d at 522, citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Digi-Tel*, 89 F.3d at 522, citing *Northrup King*, 51 F.3d at 1387. However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Handerson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 528(1985), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958). The defendant's contacts must be more than "random,"

"fortuitous," or "attenuated." *Digi-Tel*, 89 F.3d at 522, quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183. Instead, the contacts must result from the actions of the defendant itself that create a "substantial connection" with the forum state. *Digi-Tel*, 89 F.3d at 522, quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183; *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995), quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957).

In accordance with the basic principles of federal due process, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184, 116 S. Ct. 1288, 134 L. Ed.2d 232 (1996).

The third factor distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523, n.4, citing *Wessels*, 65 F.3d at 1432, n.4. Constitutional law distinguishes between "general" and "specific" jurisdiction cases. *Valspar*, 495 N.W.2d at 411. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991), quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418-19, 104 S. Ct. 1868, 1972, n.9, 1872-73, 1874-75, 80 L. Ed. 2d 404 (1984); *Valspar*, 495 N.W.2d at 411. In a specific jurisdiction case,

the defendant has few contacts with the forum state; in these cases involving truly minimal contact, the Due Process Clause requires that the case arise out of or be related to the contacts with the forum. *Valspar*, 495 N.W.2d at 411, citing *Helicopteros Nacionales*, 466 U.S. at 414, 104 S. Ct. at 1872.

Specific jurisdiction requires that defendant has "purposely directed" its activities at residents of the forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432, quoting *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182. Where, as in the present matter, personal jurisdiction is based primarily upon a single, isolated contact or the quantity of the contacts is minimal, the nature and quality of the contacts with the state become dispositive. *TRWL Fin. Establishment v. Select Int'l., Inc.*, 527 N.W.2d 573, 576 (Minn. Ct. App. 1995); *Trident Enterprises Int'l, Inc. v. Kemp & George, Inc.*, 502 N.W.2d 411, 415 (Minn. Ct. App. 1993); citing *Marquette Nat'l. Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978).

In the present matter, when viewing the evidence in the light most favorable to the Plaintiffs, the record establishes that Tristar is subject to specific personal jurisdiction within Minnesota. Tristar entered into a contract with K-Tel, a Minnesota corporation, that by its very terms contemplated "on-going duties from both of the parties." *Minnesota Min. and Mfg. Co.*, 63 F.3d at 698. The contract was signed by a representative of Tristar and faxed to K-Tel's Minneapolis headquarters. (Koblick Aff. at ¶ 6.) While that act alone might be sufficient to establish specific personal jurisdiction, K-Tel alleges a variety of additional, ancillary contacts. All payments to Tristar were directed to it via wire transfers from K-Tel's Minneapolis office. (Koblick Aff. at ¶ 7.) K-Tel also alleges a record of "repeated, sometimes daily, correspondence, telephone communications, mail and facsimiles between employees and agents of Tristar and

employees and agents of K-Tel and/or its subsidiaries in Minnesota." (Koblick Aff. at ¶ 10.) While these contacts alone are not sufficient to find personal jurisdiction, they remain "a consideration in determining whether the defendant purposely availed himself of the privilege of doing business in Minnesota." *Wessels*, 65 F.3d at 1433. K-Tel also alleges that Tristar had it named as an additional insured on Tristar's liability insurance policy. (Koblick Aff. at ¶ 13, Ex. C.) Finally, it is important to note that Minnesota has an interest in providing a forum in which its residents may litigate claims against non-residents. *Digi-Tel,* 89 F.3d at 525.

Based on the record, it is clear that Tristar's contacts with Minnesota are neither "random," "fortuitous," nor "attenuated." *Digi-Tel*, 89 F.3d at 522, quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183. Tristar's contacts with the State of Minnesota rise above the level of "minimum contacts" necessary for this court to find personal jurisdiction. *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158 (1945) (internal quotations omitted). It is also clear that Tristar's conduct and connections with Minnesota are such that it should "reasonably anticipate being haled into court there" and as such Tristar is subject to specific personal jurisdiction in Minnesota. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

In the alternative, this court finds that Tristar's contacts with Minnesota are such that general personal jurisdiction exists in Minnesota. Plaintiff K-Tel alleges that Tristar has contracted with it and/or its subsidiaries with regards to the sale of at least four other products. (Koblick Aff. at ¶ 12.) Tristar admits to selling products regularly to other Minnesota corporations such as Target stores and Fingerhut. (Mirchandani Aff. at ¶ 6.) Tristar also admits to selling almost $300,000 worth of products directly in Minnesota in 1999. (Mirchandani Aff. at ¶ 7.) In light of the "continuous and systematic" contacts that Tristar has had with the State of

Minnesota and its residents, this court finds that Tristar's contacts with Minnesota satisfy due-process requirements and, therefore, personal jurisdiction over Tristar in Minnesota is appropriate.

**2. Venue**

The general federal venue statute reads:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). A corporate defendant is deemed to "reside" pursuant to subdivision (1) in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

This Court finds that venue is proper in the District of Minnesota, because it finds that pursuant to 28 U.S.C. § 1391(a)(2) a substantial part of the Plaintiff's claim arose in the District of Minnesota. Plaintiff has alleged the breach of a contract and warranties related to that contract. (K-Tel Compl. at 15-24.) The record shows that the contract was finalized when it was faxed to K-Tel's Minneapolis office. (Koblick Aff. at ¶ 6.) The record also shows that numerous communications occurred between the two parties regarding the execution of that contract between employees and agents of K-Tel in Minnesota and employees and agents of Tristar. (Koblick Aff. at ¶ 10.)

In the alternative, this court finds that venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (c). As previously stated, this court finds that it has personal jurisdiction over Tristar.

Tristar is, therefore, deemed to reside in the District of Minnesota under § 1391(c). As a resident of the State of Minnesota, venue is proper in the District of Minnesota.

**3. Forum Non Conveniens**

Forum non conveniens exists as a method of allowing courts to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 842 (1947). Trial courts have broad discretion in deciding a motion to dismiss based on forum non conveniens. *Reid-Walen v. Hansen*, 933 F.2d 1390, 1393-4 (8th Cir. 1991), citing *Piper Aircraft Co. v. Reyno*, 454 U.S. at 235, 257, 102 S. Ct. 252, 266, 70 L. Ed. 2d. 419 (1981). The U.S. Supreme Court has outlined a number of private and public factors to be considered by the trial court in making its decision. The private factors to be considered include: the private interest of the litigant, relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, the cost of obtaining witnesses, the need to view the premises, the enforceability of a judgment, and "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. The court must also consider public factors which include: the burden of jury duty on the local community, the local interest in having the matter decided at home, congestion in courts, and the difficulty in applying foreign law. *Gilbert*, 330 U.S. at 508-9, 67 S. Ct. at 843. The balance must be strongly in favor of the defendant in order to upset plaintiff's choice of forum. *Reid-Walen*, 933 F.2d at 1394, citing *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 342 (8th Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S. Ct. 708, 79 L. Ed. 2d 172 (1984) (citations omitted). Therefore, the defendant has the burden of persuasion in proving "all elements necessary for the court to dismiss a claim based on forum non conveniens." *Reid-Walen*, 933 F.2d at 1393.

**A. Private Interest Factors**

**1. Private Interest of the Litigant**

The U.S. Supreme Court has recognized that deference should be afforded to plaintiff's choice of forum. *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. As such, the Court has stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. It is also generally recognized that U.S. citizens should not often be denied access to the courts of the United States. *Founding Church of Scientology of Washington, D.C. v. Verlag*, 536 F.2d 429, 435 (D.C. Cir. 1976). Some courts give less deference to the plaintiff's U.S. citizenship where the plaintiff is a U.S. corporation doing foreign business and bringing suit for an injury occurring abroad. *Reid-Walen*, 933 F.2d at 1395, quoting *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990). In this case, one plaintiff, K-Tel, is a U.S. corporation, while the other plaintiff, K-Tel Germany, is its wholly-owned foreign subsidiary. (Koblick Aff. at ¶ 3, 5.) While the two plaintiffs engage in international commerce, the alleged injuries suffered by the plaintiffs arose not out of a cause of action occurring outside the United States, but as the result of an alleged breach of contract or warranties arising from a contact written and executed in the United States. (K-Tel Compl. at 15-24.)

A significant factor to be considered in this case is that Defendant is a U.S. corporation. Decisions from other courts have found this factor to be of "great significance" when considering a motion to dismiss for forum non conveniens. *Verlag*, 536 F.2d. at 435. A corporation's decision to incorporate in the United States signifies that "in effect [they have] signified their willingness to be sued in American courts." *Verlag*, 536 F.2d at 435.

**2. Availability of Compulsory Attendance of Witnesses**

While Tristar has provided a list of German witnesses it foresees calling in this litigation, it overlooks the importance of the U.S. plaintiff's employees and its own employees as key witnesses. In balancing the availability of witnesses, the court must examine "the materiality and importance of the anticipated witnesses' testimony." *Reid-Walen*, 933 F.2d at 1396, citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984), *cert. denied*, 471 U.S. 1066, 105 S. Ct. 2143, 85 L. Ed. 2d 500 (1985). Plaintiffs have alleged breach of contract and warranties and, as such, it would appear that the witnesses most familiar with the creation and execution of the contract would be the witnesses most necessary to this proceeding. The witnesses most familiar with the contract would be those working for K-Tel and Tristar within the United States.

Tristar also asserts that many of the witnesses will need to be brought into the United States from Germany to testify. (Mirchandani Aff. at ¶ 3.) While this court considers the expense and delay in doing so, it also notes that "the time and expense of obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace modes of communication or travel." *Lehman*, 713 F.2d at 343. Testimony may also be taken from those outside the United States by deposition or other means if necessary. *Lehman*, 713 F.2d at 343.

**3. Other Private Factors**

Several other private factors weigh in support of this court maintaining jurisdiction over this case. The contract that lies at the heart of this matter, along with most of the other documents pertaining to this litigation, is located in the United States. (Koblick Aff. at ¶ 6.) The product that was sold pursuant to the contract is manufactured in the United States. Courts also should consider the expectations of the parties as to where anticipated suits will be tried. *Reid-Walen*, 933 F.2d at 1399. In this case, K-Tel Germany submitted letters directed from its legal

counsel in Germany to Tristar's legal counsel in Germany that attempted to negotiate a settlement. Tristar's German counsel responded to these efforts to settle by stating that its client "continues to expect that your client will contact its U.S. contract party in the United States." (Koblick Aff., Ex. C.) In looking to the expectations of both parties, it appears that the U.S. was contemplated as the place where this matter would be resolved.

### B. Public Interest Factors

#### 1. Local Interest and Burden of Jury Duty

The State of Minnesota has an interest in providing a forum in which its residents may litigate claims against non-residents. *Reid-Walen*, 933 F.2d at 1400. Any burden imposed on the local community by jury duty is balanced with the community's interest in resolving a matter between a business incorporated in the state and a corporation that does significant business with other Minnesota businesses and directly with residents of the state. *Reid-Walen*, 933 F.2d at 1400. In contrast, the interest of Germany in settling a matter related to a contract between two U.S. corporations would appear to be minimal. This court concludes that Minnesota has a stronger interest in this matter than does Germany.

#### 2. Difficulty in Untangling Foreign Law

K-Tel argues that this matter is completely contractual in nature and that U.S. law is therefore applicable. Tristar contends that issues of German law will have to be resolved by this court. In either event, courts have long recognized that "Federal courts are quite capable of applying foreign law when required to do so." *Lehman*, 713 F.2d at 345 quoting *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d. 62, 67-68 (2d Cir. 1981). While this court may have to apply foreign law in deciding this case, the mere application of foreign law is not "dispositive on the

forum non conveniens inquiry, and does not outweigh more significant private interest concerns." *Reid-Walen*, 933 F.2d at 1401.[3]

Tristar has not shown that this is one of those cases in which "exceptional circumstances" require this court to grant a motion to dismiss for forum non conveniens. *Gilbert*, 330 U.S. at 504, 67 S. Ct. at 841. The plaintiff's choice of forum, availability of witnesses, availability of evidence, interests of the local community, and other *Gilbert* factors weigh in favor of this court maintaining jurisdiction. Tristar's motion to dismiss for forum non conveniens is denied.

**4. Transfer to the District of New Jersey**

Tristar contends that pursuant to 28 U.S.C. 1404(a), the court should transfer this case to the United States District Court for the District of New Jersey. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, transfer under 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F. Supp 311, 315 (D. Minn. 1994). The court considers the convenience of the parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In considering these factors, the court must look to the particular circumstances

---

[3] This court is not certain that the substantive law of Germany would govern this dispute. Plaintiffs' claims arise out of an alleged breach of contract and warranties. In *Lehman*, the 8th Circuit considered a breach of warranties action and found that Iowa law was more likely applicable than that of the Cayman Islands. *Lehman*, 713 F.2d at 345, n.6. The similarities between this case and *Lehman* cast doubt on Defendant's assertion that the law of Germany will play a role in this case.

of the case before it. *Terra Intern., Inc., v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029, 118 S. Ct. 629, 139 L. Ed. 609 (1997).

**A. Convenience of the Parties**

A presumption in favor of plaintiff's choice of forums exists. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) citing *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S. Ct. 805, 11 L. Ed.2d 945 (1964).

In this case, Tristar is attempting to transfer this case to the district in which it maintains its principal place of business. Tristar has not provided a basis for such transfer other than to assert that it would be more convenient for it to litigate this matter there. Upon reviewing the record, it would appear that documents necessary to resolving this matter will be found in both Minnesota and New Jersey. The product itself is manufactured in Colorado and would appear to be capable of being transported to either of the two states. Based on the fact that a transfer to New Jersey would only serve to shift the inconvenience between the parties, this court concludes that this factor weighs in favor of maintaining this action in Minnesota.

**B. Convenience of the Witnesses**

In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *Graff*, 33 F. Supp. 2d at 1121,

citing *Coast-to-Coast Stores Inc., v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 732 (D. Minn. 1984).

As previously discussed in this Order, both parties contend they will need to have witnesses from their corporate offices provide testimony in this matter. Tristar contends that it will need to introduce testimony from a number of German citizens and makes the assertion that it is somehow more convenient for them to get to New Jersey than Minnesota. In considering this factor, it again appears that little would be achieved by transferring this matter other than a shifting of inconvenience between the parties. Tristar, therefore, has failed to meet its burden of persuasion with regard to this factor.

**C. Interest of Justice**

A number of considerations which may be relevant in considering this factor are the relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgement. *Graff*, 33 F. Supp. 2d at 1122.

The law to be applied appears to be either the contract law of Minnesota or that of Germany. In case of the latter, a federal court in the district of New Jersey would have no more expertise in this matter than would this Court. The second consideration, namely, the relative ability of the parties to bear the expenses of litigating in a distant forum, weighs no more heavily in favor of either party. All of the parties are corporate entities with the financial resources to litigate this matter wherever it might be brought. Tristar has already stated that for 1999 its sales were over $48 million, and K-Tel has never indicated financial constraints which might limit its ability to prosecute this action. As previously discussed, the plaintiff's choice of forum weighs

heavily in K-Tel's favor. The other factors do not play a role in this matter and, as such, this court finds that the interests of justice are best served by maintaining this case in Minnesota.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss or, in the alternative, to Transfer Venue (Doc. No. 8) is **DENIED**.

Dated: March 28, 2001

DONOVAN W. FRANK
Judge of United States District Court