UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

K-tel International, Inc. and
K-tel International, GmbH,

Plaintiffs,

v.

Civ. No. 00-902 (JNE/JGL)
ORDER

Tristar Products, Inc.,

Defendant.

---

Blake Shepard, Jr., Esq., and Susan M. Humiston, Esq., Leonard, Street and Deinard, P.A., appeared for Plaintiffs K-tel International, Inc. and K-tel International, GmbH.

Roger A. Colaizzi, Esq., and Theodore W. Atkinson, Esq., Venable, Baetjer, Howard & Civiletti, LLP, appeared for Defendant Tristar Products, Inc.

---

K-tel International, Inc. (K-tel) and its German subsidiary, K-tel International, GmbH (Dominion),[1] (collectively, Plaintiffs) brought this action in state court against Tristar Products, Inc. (Tristar) alleging claims under Minnesota law for breach of express and implied warranties and breach of contract. Tristar removed the case to this Court and now moves for summary judgment. For the reasons set forth below, the Court denies Tristar's motion.

## I. BACKGROUND

Tristar is a corporation that markets and sells consumer products. In 1997, Tristar developed the BunBlaster, an exercise product, and offered it for wholesale purchase and distribution. In September 1997, K-tel negotiated with Kate Ahearn, a Tristar sales representative, to purchase BunBlasters for resale in Germany, Austria, and Switzerland. Dominion distributed BunBlasters between March and August 1998. Starting with the first sales

---

[1] The Court adopts the parties' nomenclature and refers to K-tel International, GmbH as "Dominion."

FILED JAN 29 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED________
DEPUTY CLERK'S INITIALS________

of the BunBlaster, Dominion received complaints from purchasers regarding missing parts and defective headrests. After a user sustained an injury when a headrest broke, the German government banned the BunBlasters' sale. K-tel shipped the remaining stock of BunBlasters to a warehouse in Canada during the pendency of this action.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Breach of Warranty Claims

#### *1. K-tel's breach of warranty claims*

Tristar asserts that it is entitled to summary judgment because K-tel lacks standing to assert claims of breach of express and implied warranties. According to Tristar, K-tel lacks standing because it never purchased the BunBlaster. The Uniform Commercial Code (U.C.C.), as adopted by Minnesota, extends claims for breach of express and implied warranties "to any

person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318 (2002). Under this provision, "those who purchase, use or otherwise acquire warranted goods have standing to sue for purely economic losses." *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 565 N.W.2d 16, 20-21 (Minn. 1997). Notwithstanding Tristar's assertion, *Nishika* affords standing to assert claims for breach of express and implied warranties to parties other than purchasers.

In this case, there is evidence in the record that K-tel purchased, used, or otherwise acquired the BunBlasters. For example, K-tel and Tristar negotiated the sale and distribution agreement for the BunBlaster; a K-tel executive approved each order; payment for at least one order sent from K-tel's bank account; and K-tel, after paying shipping from Germany to Canada, is in possession of the defective BunBlasters. Because a reasonable jury could conclude that K-tel purchased, used, or otherwise acquired the BunBlasters, the Court denies Tristar's motion insofar as it claims K-tel lacks standing to assert claims for breach of express warranties and implied warranty of merchantability.

2. *Waiver*

Next, Tristar argues that it is entitled to summary judgment because Plaintiffs waived their rights to claim breach of express warranties and breach of implied warranty of merchantability by continuing to purchase the allegedly defective BunBlasters. Tristar relies on three provisions of the U.C.C. in support of its assertion that Plaintiffs waived their warranty claims.

a. Minnesota Statutes § 336.2-313 (2002)

An express warranty arises from "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Minn. Stat.

§ 336.2-313(1)(a). According to Tristar, Plaintiffs knew of the headrest defect no later than March 30, 1998. By continuing to purchase the defective BunBlasters, Tristar argues that Plaintiffs waived their right to assert a breach of express warranty claim because any express warranties could no longer be the basis of the bargain.[2] To establish that Plaintiffs knew of the headrest problem by March 30, 1998, Tristar relies on a fax sent by Rich Meier to Tristar on March 30, 1998, which states, "We have had unusually high complaints concerning missing parts and the headrest situation." The fax requested immediate shipment of 900 replacement parts, including 600 headrests.

In response, Plaintiffs contend that, having sold only 500 BunBlaster units by March 30, 1998, they could not have known the breaking headrests were intrinsic defects in the BunBlaster. According to Plaintiffs, they ordered replacement parts in March 1998 to address two concerns with the first shipment of BunBlasters: (1) units with defective headrests; and (2) units with missing parts. Meier stated that Ahearn assured him that other purchasers of the BunBlaster had not experienced similar problems and that the headrest problems likely resulted from consumer misuse, not an unsafe product. As a result of this conversation, Tristar shipped advisory labels

2 Plaintiffs contend that express warranties arose from the BunBlaster promotional materials provided by Tristar. A non-exhaustive list of statements regarding the BunBlaster follows:

- Anatomically designed: structurally shaped to provide total support of head, neck, lower back and spinal column.
- Sturdy construction: designed to sustain over 300 pounds of weight, yet easily portable.
- [The BunBlaster] enhances the pelvic lift by letting you rock higher with more resistance while supporting your head, neck and back.
- [T]he BunBlaster's amazing doctor-designed anatomical support system and comfortable, contoured head rest keeps you in perfect form
- The BunBlaster has been designed so that it can effectively target and isolate your hips, your buns and your thighs in one simple motion without putting any risk of injuries on your knees, your lower back, your head or your neck.

for placement on the headrests to insure proper assembly and use.

Viewing the record in the light most favorable to Plaintiffs, a reasonable fact-finder could conclude that by March 30, 1998, Plaintiffs were not aware that the BunBlaster's headrest was intrinsically defective. The Court therefore denies Tristar's motion insofar as it relies on section 336.2-313.

b. Minnesota Statutes § 336.2-316 (2002)

The same conclusion is warranted with regard to Tristar's argument under section 336.2-316. This section governs disclaimers of warranties and is principally meant to address those situations where parties seek to contractually exclude warranties. Minn. Stat. § 336.2-316 cmt 1. Proposed to help protect buyers, section 336.2-316 requires that contractual language intended to "exclude or modify the implied warranty of merchantability or any part of it ... must mention merchantability and in case of a writing must be conspicuous." Minn. Stat. § 336.2-316(2).

The contract between Tristar and K-tel does not contain any exclusions or disclaimers of the implied warranty of merchantability. Instead, Tristar asserts that Plaintiffs impliedly disclaimed the warranty on purchases after March 30, 1998, because they continued to purchase the allegedly defective product. Tristar's theory is premised upon Comment 8 of section 336.2-316 which states:

> Under paragraph (b) of subsection (3) warranties may be excluded or modified by circumstances where the buyer examines the goods or a sample or model of them before entering into the contract. "Examination" as used in this paragraph is not synonymous with inspection before acceptance or at any other time after the contract has been made. It goes rather to the nature of the responsibility assumed by the seller at the time of the making of the contract. *Of course, if the buyer discovers the defect and uses the goods anyway, ... resulting injuries may be found to result from his own action rather than proximately from breach.*

(Emphasis added).[3]

In support of its argument, Tristar primarily relies on *Sobiech v. International Staple and Machine Co.*, 867 F.2d 778 (2d Cir. 1989), a breach of warranty case involving the sale of machinery designed to weigh and sort onions. In that case, the seller attempted to adapt the machines to Sobiech's specialized requirements, but the machines never operated as hoped. *Id.* at 779. The Second Circuit held that Sobiech was precluded from claiming an implied warranty of merchantability because he "was aware of the experimental nature of, and potential problems with, the machines at the time he decided to purchase them [and] because he had been actually using such machines on a trial basis for several months." *Id.* at 782-83. The *Sobiech* court also stated that "this case involves extensive use and actual knowledge of the problems in issue before purchase." *Id.* at 783.

Here, Tristar's reliance on *Sobiech* is misplaced because the record does not reflect Plaintiffs' extensive use or actual knowledge of the BunBlaster's defect prior to purchase. Indeed, Plaintiffs placed all of their BunBlaster orders within a three-month period, and the distribution lasted only six months. Again, the factual dispute as to when Plaintiffs knew of the systemic nature of defective headrest precludes summary judgment.

c. Minnesota Statutes § 336.2-715 (2002)

Finally, Tristar asserts that it is entitled to summary judgment because Plaintiffs cannot recover any damages arising after March 30, 1998. Tristar relies on Minn. Stat. § 336.2-715(2), which requires proximate cause for recovery of consequential damages in breach of warranty actions. Tristar contends that Plaintiffs' damages resulted from Plaintiffs' continued purchase of

[3] Minn. Stat. § 336.2-316 (3)(b) provides in relevant part: "when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed …."

the defective BunBlaster, rather than from Tristar's breach of warranties. Again, the record does not reveal as a matter of law that Plaintiffs knew by March 30, 1998, that the BunBlaster had a systemic defect. Accordingly, the Court denies Tristar's motion as to damages.

**B. Breach of Contract Claims**

*1. K-tel*

The Court interprets Tristar's next argument as an assertion that Tristar is entitled to summary judgment because K-tel cannot establish the elements of a breach of contract claim.[4] Under Minnesota law, a claim for breach of contract consists of four elements: (1) formation of the contract; (2) performance by plaintiff of any conditions precedent to his right to demand performance by defendant; (3) a material breach of the contract by defendant; and (4) damages. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000); *see Indus. Rubber Applicators, Inc. v. Eaton Metal Prods. Co.*, 171 N.W.2d 728, 731 (Minn. 1969), *overruled on other grounds by Standslast v. Reid*, 231 N.W.2d 98 (Minn. 1975).

As a threshold matter, Tristar contends in its moving papers that the instant motion may be decided without a determination of the validity of the contract.[5] Tristar first asserts that it is

---

4 Although Tristar asserted that it is entitled to summary judgment because K-tel lacks standing to assert a breach of contract claim, Tristar failed to address the constitutional elements of standing. Instead, Tristar argued the merits of K-tel's breach of contract claim. The Court analyzes this argument accordingly.

5 Accordingly, the Court assumes without deciding that the letter dated September 23, 1997, is a valid contract. The letter provides:

> This is to confirm that [K-tel] desires to sell and distribute Tristar Products, Inc.'s "Bun Blaster" product in Germany, Austria, and Switzerland. We will sell you such quantities of the Bun Blaster product as you require for resale and distribution in those countries and will indemnify and hold [K-tel] harmless from and against any and all claims and demands arising from or in connection with property damage, economic loss, and personal injury arising from or related to the Bun Blaster product, except to the extent caused by any action or failure to act by

entitled to summary judgment because K-tel "never ordered, purchased, received or sold any BunBlaster units." As previously discussed, the record reveals evidence that could lead a reasonable jury to conclude that K-tel purchased or otherwise acquired the BunBlasters. Accordingly, the Court denies Tristar's motion insofar as it relies on K-tel's failure to purchase the BunBlaster.

Tristar next contends that it is entitled to summary judgment because K-tel cannot establish its damages. Absent supporting case law, Tristar asserts that K-tel's costs incurred in shipping and storage stem from a gratuitous action that cannot constitute damages. In general, damages for breach of contract seek to place the aggrieved party in the position in which he would be if the contract had been performed. *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983). Also available under the U.C.C. are incidental damages, which include "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected." Minn. Stat. § 336.2-715(1).

Here, there is evidence in the record that K-tel avoided high fees for storage in Germany by shipping the remaining BunBlasters to Canada, where they are currently stored cost-free. Viewed in the light most favorable to K-tel, a reasonable fact-finder could conclude that the shipping charges are incidental damages reasonably incurred as a result of receiving an unmerchantable product. Accordingly, the Court denies Tristar's motion as to K-tel's breach of contract claim.

2. *Dominion*

Tristar next asserts that it is entitled to summary judgment because Dominion is not third-

---

> [K-tel]. In return, [K-tel] will indemnify and hold Tristar Products, Inc. harmless from and against any and all claims and demands arising from or in connection with [K-tel's] activities in marketing, selling, and distributing the Bun Blaster product.

party beneficiary of the contract. The parties agree that the relevant analysis is the intent-to-benefit test.[6] The intent-to-benefit test looks to whether the contract expressed some intent by the parties to benefit the third party through contractual performance. *Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 138 (Minn. 1984). "The contract must be read in light of all the circumstances and it is pertinent, in ascertaining intent, to inquire to whom performance is to be rendered." *Id.* at 140. "Whether the parties intended to benefit a third party is a question of fact." *Julian Johnson Constr. Corp. v. Parranto*, 352 N.W.2d 808, 811 (Minn. Ct. App. 1984).

According to Tristar, the contract does not express an intent to benefit Dominion because Dominion does not appear in the text of the contract. It is undisputed, however, that Tristar rendered performance directly to Dominion. Viewing the record in the light most favorable to Plaintiffs, a reasonable fact-finder could conclude that Dominion is an intended third-party beneficiary to the contract. The Court therefore denies Tristar's motion insofar as it asserts that Dominion is not a third-party beneficiary.

*3. The contract's savings clause*

Tristar also asserts that it is entitled to summary judgment because Plaintiffs' actions invoke the contract's savings clause. According to Tristar, it is not required to indemnify Plaintiffs for their own "action or inaction." The savings clause provides:

> [Tristar] will sell [K-tel] such quantities of the Bun Blaster product as you require for resale and distribution in those countries and will indemnify and hold [K-tel] harmless from and against any and all claims and demands arising from or in connection with property damage, economic loss, and personal injury arising from or related to the BunBlaster product, *except to the extent caused by any action or failure to act by [K-tel].*

---

[6] Minnesota adopted the Restatement (Second) Contracts § 103 which provides for two tests to determine whether a third party is an intended beneficiary who has standing to sue under the contract or an incidental beneficiary who cannot sue to enforce the contract. *Buchman Plumbing Co. v. Bd. of Regents of the Univ. of Minn.*, 215 N.W.2d 479, 483-84 (Minn. 1974). The parties agree that the other test, the duty owed test, is not applicable here.

(Emphasis added). According to Tristar, Plaintiffs' damages after March 30, 1998, are the "result of Dominion's decision to plunge ahead with sales with the full knowledge of the alleged defect and to gamble that its decision would pay off." As previously discussed, the record does not reveal that as a matter of law Plaintiffs knew by March 30, 1998, that the alleged defect was systemic. The Court therefore denies Tristar's motion insofar as it relies on the contract's savings clause.

**C. Accord and Satisfaction**

Finally, Tristar asserts it is entitled to summary judgment because the parties reached an accord and satisfaction with regard to the defective BunBlasters. Minnesota law defines an accord and satisfaction as follows:

> An accord is a contract in which a debtor offers a sum of money or some other stated performance, in exchange for which a creditor promises to accept the performance in lieu of the original debt. The satisfaction is the performance of the accord, generally the acceptance of money, which operates to discharge the debtor's duty as agreed to in the accord.

*Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 72 (Minn. 2000). To demonstrate an enforceable accord and satisfaction, a party against whom a breach of contract claim has been made must establish four elements:

> (1) the party, in good faith, tendered an instrument to the claimant as full satisfaction of the claim; (2) the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim; (3) the amount of the claim was unliquidated or subject to a bona fide dispute; and (4) the claimant obtained payment of the instrument.

*Id.* at 73; *see* Minn. Stat. § 336.3-311 (2002). "Whether there has been an accord and satisfaction is a question of fact." *Webb*, 617 N.W.2d at 73.

According to Tristar, a fax sent from Meier to Ahearn on June 29, 1998, and Tristar's

shipment of replacement parts constitute an accord and satisfaction. Plaintiffs respond that the conspicuous language necessary to create an accord and satisfaction is absent from Meier's fax. Meier's fax states: "Per your request, I will attempt to provide you with a recap of the [problems with the BunBlaster]. ... We will need solutions to these situations agreed upon quickly so consumers can be satisfied and defective return rates can be reduced." A reasonable fact-finder could conclude that these words do not constitute a "conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." Accordingly, the Court denies Tristar's motion insofar as it asserts the parties formed an accord and satisfaction.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 83] is DENIED.

Dated: January 29, 2004

JOAN N. ERICKSEN
United States District Judge